**Daniel Arroyo CINTRON**

v.

**Otis R. BOWEN.**

**Civ. A. No. 87–4956.**

United States District Court, E.D. Pennsylvania.

May 26, 1988.

Thomas D. Sutton, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Richard J. Stout, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiff applied for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act (R. 147–160). The applications were denied—initially and on reconsideration by the Office of Disability Operations of the Social Security Administration (R. 205–210). The case was reviewed *de novo* by an Administrative Law Judge (ALJ), and a supplemental hearing was held. The ALJ's decision, dated April 28, 1987, denied the application. On July 20, 1987 the Appeals Council denied a request for review. This appeal followed, 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the decision of the Secretary of Health and Human Services (Secretary). Both plaintiff and defendant move for summary judgment.

Plaintiff's claims are based on both physical and mental impairments. Plaintiff is alleged to have pain and cramps in his leg upon prolonged periods of walking or standing. He was diagnosed as having osteoarthritis of the right ankle, resulting from a poorly healed fracture in 1980 (R. 278–279).

Associated with a long history of alcohol abuse, plaintiff, age 40, has been diagnosed repeatedly as having organic brain syndrome (R. 262) and a schizotypal personality disorder (R. 293).[1] His full-scale IQ is 73, which places him in the fifth percentile of adult population, the lowest limit of borderline functioning (R. 309–319).

His conditions have been marked by auditory hallucinations, incoherent thought, poor concentration, limited insight and paranoid thinking (R. 15–16). Medical and psychological reports suggest that plaintiff has difficulty keeping schedules or adapting to changes (R. 275–317). Plaintiff testified that he has been fired for physically fighting with supervisors or co-workers. One psychologist found plaintiff to be capable of understanding simple instructions and, if motivated, working within a given schedule.

Plaintiff asserts that his mental impairment renders him disabled as a matter of law. Under the Secretary's regulations, if an impairment meets or equals a listed impairment in Appendix 1, a claimant is disabled without regard to age, education or work experience. 20 C.F.R. § 404.1520(d) (1987). Plaintiff's mental impairment appears to fit within the listing of personality disorders.

12.08 Personality Disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

---

1. Schizotypal personality disorder is characterized by "oddities of thought, perception, speed, and behavior [which] cause either significant impairment in social or occupational function or subjective distress." Diagnostic and Statistical Manual of Mental Disorders, 3d Edition (DSM–III). Plaintiff also lost a job as a painter because of intoxicating himself on inhalants. There is some evidence of drug abuse.

A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:

1. Seclusiveness or autistic thinking; or

2. Pathologically inappropriate suspiciousness or hostility; or

3. Oddities of thought, perception, speech and behavior; or

4. Persistent disturbances of mood or affect; or

5. Pathological dependence, passivity, or aggressivity; or

6. Intense and unstable interpersonal relationships and impulsive and damaging behavior; AND

B. Resulting in three of the following:

1. Marked restriction of activities in daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. § 4.04.1598 Subpart P listing 12.-08 (Appendix 1).

The ALJ found that plaintiff's condition satisfied part "A" but not part "B"; further, that plaintiff was unable to perform his past work, 20 C.F.R. § 404.1520(c), but was not precluded from engaging in substantial gainful employment in the future, 20 C.F.R. § 404.1520(f); and, therefore, that plaintiff was not "under a disability," as defined by the Social Security Act (R. 21).

For a reviewing court, the scope of review is statutorily limited. 42 U.S.C. § 405(g). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." *Id. See also Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined by the Supreme Court as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The decision of the Secretary must stand unless not based on substantial evidence.

■ The finding that claimant did not satisfy the part "B" requirements of the applicable listing does not appear to have been based on substantial evidence. The decision is not self-sufficient. The ALJ determined that the claimant did not exhibit "marked difficulties in maintaining social functioning." At first, the decision noted that the claimant provided no evidence corroborating his testimony regarding frequent firings as the result of altercations. Then, it stated that social functioning does not relate to whether a person has friends or not, but to the capacity "to interact appropriately and communicate effectively with other individuals" (R. 20). This may be so. The regulations, however, specify that social functioning "includes the ability to get along with others," and that altercations or firings may show difficulties in social functioning. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(2). The evidence of marked or serious interference with social functioning should be re-evaluated and, if necessary, supplemented.

■ Since the claimant's clinical history, diagnoses, and record of altercations and firings may be critical, the ALJ has an evidentiary duty. *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir.1985). If the ALJ believes claimant's evidence was unclear or inclusive, the ALJ should secure evidence needed to make this determination. *Id.*

The ALJ's further evaluation that the claimant exhibited no "deficiencies of concentration, persistence, or pace and no episodes of deterioration or decompensation in a work or work-like setting" (R. 19), also seems at odds with the evidence. Both the psychiatrist and the psychologist ques-

tioned claimant's ability to function in the workplace, as did the assessment made by the Charles Drew Mental Health Center (R. 285).

Even if the Secretary determines that the claimant does not meet or equal a listed impairment, the claimant may still recover if he is unable to perform "substantial gainful employment" as exists in sustantial numbers in the national economy. 20 C.F.R. 404.1520(f).

Both parties have certain evidentiary burdens. The claimant bears the initial burden of demonstrating by medical evidence his inability to return to his former occupation. *See, e.g., Ferguson,* 765 F.2d at 36; *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979). If the claimant meets this burden, the burden shifts to the Secretary to show the existence of substantial gainful employment that the claimant has the capacity to perform. *Id.* at 406. The burden upon the Secretary is not one of persuasion, but of producing substantial evidence of "substantial gainful employment." *Id.*

Plaintiff has met his burden. He was a shipper-stacker, a position that required continual standing and walking, and lifting up to 35 pounds. The ALJ found that plaintiff's physical impairments would preclude constant walking or lifting more than 20 pounds at a time and that plaintiff is "unable to perform his past relevant work" (R. 21).

The ALJ appears to have relied on the testimony of a vocational expert in concluding that plaintiff is able to perform the duties of an office cleaner or a security alarm monitor or to engage in some manufacturing jobs of a sedentary nature (R. 18–21). In turn, the vocational expert's opinion was predicated on his belief that plaintiff could perform light work (R. 133–137). By definition, light work may entail a "good deal of walking or standing." 20 C.F.R. § 404.1567(b) (1987). A person doing light work could be required to walk or stand frequently and for extended periods of time. Office cleaning, for example, is not a sedentary job. A security alarm monitor may be required to be on his feet

in times of emergency. The ALJ did not specifically determine whether plaintiff's impairments precluded such activities. By implication, the finding that plaintiff had the "exertional capacity" to perform certain "sedentary and/or light work" suggests that the evidence of inability to walk or stand for more than minimal periods was accorded little weight. If so, the reasoning should be explained.

So, also, the evidence of mental impairment, while recognized, appears to have been minimized. The vocational expert does not appear to have been fully informed of these limitations and, therefore, could not consider the effect of them on plaintiff's employability.

In light of these apparent deficits in the testimony of the vocational expert, the Secretary cannot be said to have met the burden of producing evidence that plaintiff could perform an alternative job that exists in substantial numbers in the national economy. *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984).

The claim will be remanded for proceedings consistent with this memorandum. Summary judgment does not appear to be justified for either party.